**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID DAUBENMIRE, et al.,** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **Case No. C2-04-1105** |
| **v.** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **CITY OF COLUMBUS, et al.,** | : | |
| | : | **Magistrate Judge Kemp** |
| **Defendants.** | : | |
| | : | |

**OPINION AND ORDER**

**I.  INTRODUCTION**

This matter is before the Court on the Motions to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6) brought by Defendants City of Columbus ("City"), Sergeant Michael Piccininni ("Sergeant Pinccininni") and Officer Todd Bush ("Officer Bush") (collectively, the "Defendants").  Defendants contend that Plaintiffs', Thomas Meyer, Charles Spingola, and David Daubenmire (collectively, the "Plaintiffs"), Complaint fails to state a claim upon which relief may be granted.  For the reasons set forth herein, the Court **GRANTS** Defendants' Motion to Dismiss on all counts.

-1-

## II.  BACKGROUND[1]

This case involves three Plaintiffs whose claims arise from incidents occurring from the year 2000 through the present.  Thus, for better organization, the Court has arranged the facts according to which Plaintiff(s) have made the allegation.

### A. Operative Facts Relevant to Plaintiffs Spingola and Meyer in 2000-2003

Plaintiffs Charles S. Spingola[2] ("Spingola") and Thomas R. Meyer[3] ("Meyer") allege that, beginning in 1999, the two of them have traveled to downtown Columbus, Ohio to view the "Gay Pride" parade[4] and to protest what they describe as, "the perverse celebration of the Homosexual lifestyle."  *See* Complaint ¶ 12.  Spingola and Meyer state that, as part of their protest, during the 2000 parade, they "burned two Homosexual flags[5] without incident, without obtaining an open burning permit, and with the protection of City Police."  *Id.*

Nonetheless, Plaintiffs allege that when they traveled to the June 23, 2001 Columbus "Gay Pride" parade intending to burn a "Rainbow Flag" on a public street near the intersection of Broad and High streets, they were approached by Defendant police officers, Piccininni and

---

[1]The following facts are adopted, in part, from Plaintiffs' Complaint.

[2]Plaintiff Spingola was a citizen of the United States of America and a resident of Licking County, Ohio, at all times relevant to this Complaint.  *See* Complaint ¶ 4.

[3]Plaintiff Meyer was a citizen of the United States of America and a resident of Licking County, Ohio, from 2001 until 2003.  He is now a resident of the State of Arizona.  *See* Complaint ¶ 5.

[4]Plaintiffs refer to the parade as "the Homosexual (a.k.a. "Gay Pride") parade." Throughout the rest of this opinion, this Court will refer to it as the "Gay Pride" parade.

[5]When Plaintiffs refer to "Homosexual flag," they refer to the rainbow-colored flag that symbolizes gay pride and diversity.  Throughout the rest of this Opinion, the Court will refer to the flag as the "Rainbow Flag."

Bush who told them, "You can't burn that.  You can't burn anything now."  *See id*. at ¶ 13.

Spingola allegedly responded to Defendants' order by saying: "Yes, this is my flag.  You said I

couldn't burn it two years ago because it wasn't my flag, but now this is my flag and I'm going

to burn it.  It's a free speech issue, I have a right to burn this flag.  You can burn the American

flag, but you can't burn the [sodomite] flag."[6]

Plaintiffs allege that "as soon as [they] ignited the flag, Defendants Piccininni and Bush

arrested them and threw the burning flag onto the ground."  *See* Complaint ¶ 14.  Further,

Plaintiffs assert that Sergeant Piccininni and Officer Bush did not take action to protect

bystanders from the fire and failed to inform Plaintiffs that they needed a permit to burn a flag.

*Id*.  Plaintiffs also aver that Defendants arrested them without a warrant, charging them with

"[o]pen [b]urning without a permit, an alleged violation of Columbus City Code § 2501.985[7] and

Ohio Fire Code F-403[8] (as incorporated into Title 25 of the Columbus City Code)."  *Id*. at 15.

---

[6]This excerpt is taken from Plaintiffs' Complaint for Money damages, filed June 19, 2003.

[7]Section 2501.985 of the Columbus City Code provides: "No person shall knowingly violate any provision of the Columbus Fire Prevention Code or the Ohio Fire Code as incorporated into the Columbus Fire Prevention Code or any order made pursuant to such." Col. City Code § 2401.985; *see City of Columbus v. Meyer & Spingola*, 786 N.E.2d 521, 524 n.1 (Ohio App. 2003).

[8]O.F.C. F-403, which was adopted and promulgated as part of Ohio Admin. Code 1301:7-7-04, provides, in relevant part:

(c) Section F-403.0 Open burning
(1) F - 403.1 General: A person shall not cause or allow open burning unless approved in accordance with this code.
(2) F-403.2 Definitions: The following words and terms shall, for the purposes of this section and as stated elsewhere in this code, have them earnings shown herein. . . .
"Open burning": The burning of any materials wherein products of combustion are emitted directly into the ambient air without passing

The open burning charges brought against Plaintiffs Meyer and Spingola were assigned

---

through a stack or chimney from an enclosed chamber.  For the purpose of this definition, a chamber shall be regarded as enclosed, when, during the time combustion occurs, only appertures, ducts, stacks, flues or chimneys necessary to provide combustion air and permit the escape of exhaust gas are open. . . .

(4) F-403.4 Approval required: Open burning shall be allowed after obtaining approval from the code official for recognized silvicultural or range or wildlife management practices, prevention or control of disease or pests, providing heat for outworkers, and a bonfire.

(a) F.403.4.1 Application: Applications for open burning shall be submitted in writing at least ten days before the fire is set and shall be in such form and contain such information as required by the code official.  Such applications shall contain, as a minimum, information regarding the purpose of the proposed burning, the nature and quantities of material to be burned, the date when such burning will take place, the location of the burning site, and the on-site fire-extinguishing equipment to be provided.

(b) F-403.3.2 Authorization: Open burning shall be permitted with prior notification to the code official and upon receipt of written permission from the jurisdictional environmental protection agency (EPA) authority, provided that any conditions specified in the permission are followed for:

(I) Disposal of hazardous or toxic material where the EPA determines that there is no practical alternative method of disposal;

(ii) Instruction in methods of fire fighting or for research in control of fires, in emergency or other extraordinary circumstances for any purpose determined to be necessary by the EPA;

(iii) Disposal of landscape waste except residential and agricultural waste; or

(iv) Recognized agricultural or horticultural management purposes to maintain or increase the quantity or quality of agricultural or horticultural production. . .

(c) Open burning prohibited: The code official shall prohibit open burning that will be offensive or objectionable due to smoke or odor emissions when atmospheric conditions or local circumstances make such fire hazardous.  The code official shall order the extinguishment, by permit holder or the fire department, of any open burning that creates or adds to a hazardous or objectionable situation. . . .

See OHIO ADMIN. CODE 1301:7-7-04, Open Flames or Burning; see City of Columbus v. Meyer, 786 N.E.2d at 524-26.

to the Franklin County Municipal Court, Environmental Division, and Plaintiffs exercised their

right to a jury trial.  Nonetheless, Plaintiffs claim that because they were faced with the threat of

a six month jail sentence, and because the trial judge made a pretrial ruling[9] that "prevented them

from presenting evidence of selective prosecution to the jury," they were motivated to enter

pleas of "no-contest."[10]  *Id.* ¶ 26.  Thereafter, the state court found both Meyer and Spingola

"[g]uilty of open burning without a permit."  *Id.*

Prior to entering their no-contest pleas, Plaintiffs Meyer and Spingola challenged the

constitutionality of the Fire Code, specifically the open burning permit requirements.  Complaint

¶ 18.  In defense of the City police officers' actions, however, the City Prosecutor represented

that "the City would have issued a permit for open burning on the public street or sidewalk had

[Plaintiffs Meyer and Spingola] merely applied for one."  *Id.* ¶ 17.  Nonetheless, around

November 28, 2001, the Court of Common Pleas dismissed the open burning charges against

Meyer and Spingola on constitutional grounds.  *Id.*  The City appealed the Court of Common

---

[9]In their Complaint, Plaintiffs referred to the Judge's decision to prevent Plaintiffs from presenting evidence of "selective prosecution" as a "pretrial ruling."  *See* Complaint ¶ 26. Nonetheless, in their Opposition Motion, Plaintiffs include the following footnote:

> In this regard, Plaintiffs must clarify an allegation that may be misleading in the Complaint.  The "pretrial ruling" by the state court judge referred to in paragraph 26 of the Complaint was nothing more than an informal, off-the-record pretrial discussion with counsel.  The issue was not litigated or "determined" in any legal sense.

*See* Pl.'s Opposition at 13 n.2.

[10]Plaintiffs allege that if they litigated the dispute, they faced a six month jail sentence, but if they pled "no-contest," they would only face a $100 fine with no jail time.  As such, Plaintiffs allege that, "with the express purpose of asserting their claim for selective prosecution in this federal civil action, Plaintiffs entered a plea of no-contest and were found Guilty of Open Burning without A Permit."  *See* Complaint ¶ 26.

Pleas' decision. *Id.* ¶ 18; *City of Columbus v. Meyer & Spingola*, 786 N.E.2d at 521. Following the City's appeal, on March 18, 2003, the Franklin County Court of Appeals, Tenth Appellate District of Ohio reversed the lower court's dismissal and reinstated the open burning charges against Plaintiffs Spingola and Meyer, finding O.F.C. F-403 to be constitutional in its application to the symbolic flag burning. The Ohio Supreme Court denied review of the appellate court's decision on July 30, 2003. *See Columbus v. Meyer*, 792 N.E.2d 200 (Ohio 2003) (denying review of the lower court's decision to the Ohio Supreme Court). Mr. Daubenmire was not named as a plaintiff in that case, and Officer Bush was not named as a defendant.[11] On July 25, 2003, Defendants removed the action to federal court. Plaintiffs filed the instant Complaint on November 19, 2004, naming the City, Sergeant Piccininni and Officer Bush as Defendants.

Plaintiffs allege that while their claims were being heard in state court, they learned the following facts upon which they now rest their selective prosecution argument. *See* Complaint ¶¶ 21-24. Plaintiffs claim to have learned of another man, a Columbus resident name Bill Buckel, "who went to great lengths over a period of several months to lawfully obtain an open burning permit" following Plaintiffs' arrest. *Id.* ¶ 21. According to Plaintiffs, Mr. Buckel believed that the "new voter registration forms opened the door to vote fraud," and, following the City's issuance of a permit, he intended to "burn the forms in protest on a City sidewalk in front of the Ohio Secretary of State's office on February 28, 2002." *Id.*

---

[11]In their original Complaint filed with the Court of Common Pleas on June 19, 2003, Plaintiffs, Meyer and Spingola, sued the City, Sergeant Piccininni, and "John Does one through five" from the Columbus Police Department under 42 U.S.C. § 1983 seeking damages and injunctive relief for violations of the First, Fourth, and Fourteenth Amendments to the United States Constitution, and for violations of Plaintiffs' rights under the law of Ohio. *See* Defs.' Motion to Dismiss, Ex. 2 at 1.

Plaintiffs allege that Mr. Buckel "followed all of the recommendations of various City offices, as the City claimed Spingola and Meyer should have done prior to their flag burning." Complaint ¶ 22. Plaintiffs argue that, "contrary to all of the representations of City prosecutors while they prosecuted [Plaintiffs] about the ready availability of open burning permits," the City refused to grant Mr. Buckel's burning permits for such a protest. *Id*. In fact, the City's Director of Public Service sent Mr. Buckel a letter stating that the City would not issue permits "to open burn in a public right of way." *Id*.

Nonetheless, Mr. Buckel was determined to carry out his protest, with or without a City permit. Complaint ¶ 23. Therefore, on February 28, 2002, as planned, Mr. Buckel "conducted his open burning protest on a public sidewalk in downtown Columbus, with no police interference, no arrest, and no other negative ramifications." *Id*. Plaintiffs allege that "[t]he reason Buckel was allowed to conduct an open burning without a permit, without any interference by City officials, was that the City officials did not care about the content of Mr. Buckel's message," and that Plaintiffs were arrested for their flag burning because "City officials are sympathetic to the Homosexual rights movement and hostile to [Plaintiffs], whose message greatly irritates and offends the homosexual community." *Id*. ¶ 24. Accordingly, Plaintiffs allege that their arrests were "therefore the result of the City's impermissible content-based and viewpoint-based discrimination, and had nothing to do with fire safety." *Id*.

**B. Additional Facts Relevant to Plaintiff Spingola in 2004**

In addition to the above facts relevant to Plaintiffs, Spingola and Meyer, Spingola alleges that the City violated his Constitutional rights in 2004 as well. According to Plaintiff Spingola, on June 26, 2004, he desired to attend the "Gay Pride" parade to try, once again, to burn a

"Rainbow Flag" in protest.  Spingola claims that he had "multiple contacts with appropriate City and state officials," and that "City officials told [him] he was 'required to obtain permission from the Ohio Environmental Protection Agency (EPA).'"  *Id.*  "Upon contacting the EPA, however, Spingola learned that the EPA does not issue burn permits but merely needs to know about open burning."  *Id.*

On June 9, 2004, Spingola submitted a "Notification of Intent to Conduct Open Burning to the EPA" and an "Application for Burn Permit" to the Columbus City Fire Division seeking permits to burn the "Rainbow Flag" in one or more locations.  Complaint ¶ 31.  Nonetheless, as of June 23, 2004, Spingola had still received neither verbal approval nor a written permit from the City.  *Id.* ¶ 31.  Seeking an answer, on June 23, 2004, Spingola's attorney called the City Prosecutor's office to inquire why the City had not yet issued a burn permit to Spingola.  *Id.*  Further, Spingola' attorney suggested to the Prosecutor's office that "litigation would follow" if the City denied Spingola a permit.  *Id.* ¶ 32.

Following his lawyer's contact with the City, on June 24, 2004, Spingola submitted a new "Application for Burn Permit" seeking the City's approval for two locations at 10:00 a.m. and 1:30 p.m., respectively, on June 26, 2004.  Complaint ¶ 33.  At the same time, Spingola's attorney had more contacts with "City officials regarding Spingola's applications."  *Id.*  As of June 25, 2004, however, it was still unclear whether the City would issue Spingola multiple burn permits, or any burn permit whatsoever.  *Id.*

Later that day, less than 24 hours before the "Gay Pride" parade was scheduled to begin, City officials informed Spingola that they would issue him burn permits.  Complaint ¶ 34. Nonetheless, Spingola claims that, despite being issued these permits, "he still faced intimidation

from the City when one of its police officers approached him shortly before 1:00 p.m. and threatened [him] with arrest if he did not begin his burn demonstration right at 1:00 p.m." *Id*. Even so, Spingola waited until 1:30 p.m., consistent with the burn application, and he was not arrested in spite of the police officer's threats. *Id*.

### C. Additional Facts Relevant to Plaintiff Daubenmire in 2004

Plaintiff, David E. Daubenmire ("Daubenmire")[12] is the founder of "Pass the Salt Ministries," a Christian ministry "devoted to upholding Christian Values in American Culture." Complaint ¶ 36.  On July 15, 2004, Daubenmire applied to the City for open burning permits for ceremonial burnings to be held in downtown Columbus on July 19 and July 23; he also notified the EPA of his intentions.  *Id*.  Daubenmire's planned ceremonial burnings, to be conducted "in conjunction with other Christian leaders and groups who had traveled to the City of Columbus from around the United States, included: a) the burning of the Koran (Holy Book of Muslims) and the ["Rainbow Flag"] at City Hall (July 19); and b) the burning of several United States Supreme Court decisions, viewed by Christians as undermining Biblical morality and giving constitutional protection to sinful behavior, outside of the federal courthouse (July 23)."  *Id*.

Daubemire claims that he provided all the information that the City Fire Division and the EPA requested for the issuance of an open burning permit.  Complaint ¶ 37.  As such, when Daubenmire had not heard from the EPA or the City, and when no one from any office or agency definitively denied his requests, he assumed that the City had impliedly approved his permit applications.  *Id*.

---

[12]Plaintiff Daubenmire was a citizen of the United States of America and a resident of Licking County, Ohio at all times relevant to this Complaint.  *See* Complaint ¶ 3.

On July 19, the date of his ministry's first planned ceremonial burning, the planned burn site was "surrounded [by] and monitored [by] dozens of City police officers."  Complaint ¶ 38. Daubenmire claims that the police officers "creat[ed] an environment of great intimidation for the peaceful assembly of Christians."  *Id.*  Moreover, before the ceremonial burning began, Daubenmire claims that a City official informed him that "[his requested] burn permit had been denied and that anyone who conducted an open burning would be arrested."  *Id.*  Accordingly, Daubenmire cancelled the burning demonstration.  *Id.*

On July 20, Daubenmire and "at least one other Christian leader" met with City officials to challenge the denial of his burn permit and "to press for the issuance of permits for ceremonial burnings on subsequent days."  Complaint ¶ 39.  At least one City official indicated that "[a] permit had not been issued to Daubenmire because of the content of what was being burned (i.e., the Koran), suggesting that the City did not want to damage its good relations with the Muslim community."  *Id.*  Only after the Christian leaders threatened a press conference to "expose to the community the expense incurred by the City for its passive police presence to monitor [allegedly] peaceful Christians the previous evening" did the City capitulate and agree to issue burn permits for July 22 and 23.  *Id.*  Nonetheless, the City forced Daubenmire to reapply for the permits, which limited burning times to twenty minutes.  *Id.*

On July 22, Daubenmire and the ministry carried out their first ceremonial burning "without incident," and, allegedly, one City official even indicated that he had extended the time for the burning ceremony.  Complaint ¶ 40.  On July 23, the ceremony included a "procession to the federal courthouse where the Supreme Court decisions were to be burned in a safe container on the public sidewalk."  Complaint ¶ 41.  Before the procession arrived there, however, the

Christian leaders claim that the City officials informed them that their burn permit had expired. *Id*.  Thereafter, "at least some of the assembly returned to City Hall, where one Christian leader burned the Supreme Court decisions and was arrested." *Id*.

### D. The Dispute

Following the above events, Plaintiffs brought the following claims under 42 U.S.C. § 1983.  *See* Complaint ¶¶ 45-50.  In the First Cause of Action, Plaintiffs Meyer and Spingola allege that Defendants violated the First, Fourth, and Fourteenth Amendment rights of Plaintiffs Meyer and Spingola related to their arrests and prosecution for open burning without a permit on June 23, 2001. *Id*. ¶¶ 45-46.  In their Second Cause of Action, Plaintiffs seek injunctive relief against Defendant City stating that they desire to engage in ceremonial burning in the future.  *Id*. ¶ 48.  Finally, in their Third Cause of Action, Plaintiffs seek a declaratory judgment against Defendant City, alleging that their rights under the First and Fourteenth Amendments have been violated and that the City's policies and practices regarding open burning permits are unconstitutional. *Id*. ¶ 50.  In their Prayer for Relief, Plaintiffs seek money damages, preliminary and permanent injunctive relief, and a declaratory judgment to restrain and enjoin the City from enforcing the City fire code to prevent expressive burning in the future. *Id*.  Defendants argue that each of Plaintiffs' causes of action fails to state a claim upon which relief may be granted.

### III.  STANDARD OF REVIEW

In considering a Rule 12(b)(6) Motion to Dismiss, the Court is limited to evaluating whether a plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir. 1983).  All factual allegations made by a plaintiff are deemed admitted and ambiguous allegations must be

construed in his favor. *Murphy v. Sofamor Danek Gp., Inc.,* 123 F.3d 394, 400 (6th Cir. 1997).

A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that

the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief."

*Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996) (quoting *Conley v.*

*Gibson*, 355 U.S. 41, 45-46 (1957)). While the complaint need not specify every detail of a

plaintiff's claim, it must give the defendant "fair notice of what the plaintiff's claim is and the

grounds upon which it rests." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994)

(quoting *Conley*, 355 U.S. at 47).

Nonetheless, this liberal standard of review does require more than the bare assertion of

legal conclusions.  *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted).

A complaint must contain either direct or inferential allegations with respect to all the material

elements necessary to sustain a recovery under some viable legal theory.  *Id.* (citations omitted).

## IV.  ANALYSIS

Plaintiffs bring each of their claims under 42 U.S.C. § 1983, which provides:

[e]very person who under color of any statute, ordinance, regulation, custom or usage, of
any State. . . subjects, or causes to be subjected, any citizen of the United States or other
person within the jurisdiction thereof to the deprivation of any rights, privileges, or
immunities secured by the Constitution and laws, shall be liable to the party injured in an
action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "By its terms, § 1983 creates no substantive rights; it merely provides

remedies for deprivations of rights established elsewhere."  *See Gardenhire v. Schubert*, 205

F.3d 303, 310 (6th Cir. 2000) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985)).  In this

case, Plaintiffs allege that Defendants violated their First Amendment right of free speech, their

-12-

Fourth Amendment right to be free from unreasonable searches and seizures, and their

Fourteenth Amendment right to equal protection of the laws. In their Motion to Dismiss,

Defendants argue that Plaintiffs' Complaint fails to state a claim upon which relief may be

granted and they assert a number of affirmative defenses. The Court will now consider the

Parties' arguments.

### A. Plaintiffs' First Cause of Action:
### Whether Plaintiffs Meyer and Spingola Fail to State a § 1983
### Claim Based on their Arrests and Prosecution for "Open Burning" in June 2001

In response to Plaintiffs' First Cause of Action, Defendants argue that Plaintiffs Meyer

and Spingola have failed to state a claim under 42 U.S.C. § 1983 based on their arrests and

prosecution for open burning in 2001. Defendants primarily base their arguments on the

affirmative defenses of collateral estoppel and qualified immunity.

### 1. Plaintiffs' Concede that their Claims Against Defendant
### Officer Bush are "Time-Barred" Under Ohio Law

As a preliminary matter, the Court will consider Plaintiffs' claims against Defendant

Officer Bush. Plaintiffs assert that Officer Bush violated the constitutional rights of Plaintiffs

Meyer and Spingola in connection with their arrests for "open burning" on June 23, 2001. In

response to Defendants' argument that Plaintiffs' claims against Officer Bush are time-barred

under Ohio Law,[13] Plaintiffs concede that those claims were untimely, even under Ohio's

---

[13]Defendants cite Ohio Rev. Code § 2305.10. However, this statute relates to Ohio
products liability claims. This Court believes that Defendants meant to cite Section 2305.19 of
the Ohio Code, Ohio's "savings statute," which reads, in part:

(A) In any action that is commenced or attempted to be commenced, if in due time a
judgment for the plaintiff is reversed or if the plaintiff fails otherwise than upon the
merits, the plaintiff or, if the plaintiff dies and the cause of action survives, the plaintiff's

"savings statute." Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Count One of Plaintiffs' Complaint as applied to Defendant Officer Bush.[14]

### 2. Collateral Estoppel (Issue Preclusion) & "Probable Cause"

In their Motion to Dismiss, Plaintiffs rely heavily on "the [affirmative] defense of res judicata or issue preclusion"[15] – doctrines promoting the principle of finality of judgments. The Court's analysis of whether Plaintiffs are collaterally estopped from asserting their First Cause of Action follows.

---

representative may commence a new action within one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later. This division applies to any claim asserted in any pleading by a defendant. . . .

OHIO REV. CODE § 2305.19.

[14]Though Plaintiffs agree that their claims against Defendant Officer Bush are time-barred, in their Opposition Motion, they reserve the right to name him as a defendant based upon alleged violations in the Summer of 2004, writing, "[s]hould Officer Bush be identified as one of the yet-to-be-identified John Doe Defendants in this case, based upon the alleged violations in Summer of 2004, Plaintiffs reserve the right to name him accordingly for acts that would not yet be time barred and were not the subject of the *Meyer* case." Pl's Opp. at 3.

[15]In their Opposition Motion, Plaintiffs counter-argue that "Defendants erroneously refer to res judicata (claim preclusion) when the real issue is collateral estoppel (issue preclusion)." *See* Pl.'s Opposition at 12. "Res Judicata" or claim preclusion "prevents a plaintiff from suing on a claim that has already been decided." *See* JACK H. FRIEDENTHAL et al., CIVIL PROCEDURE § 14.1, at 610 (2d ed. 1993). "Collateral estoppel" on the other hand, occurs when the "second lawsuit is *collateral* to the first, i.e. not the same claim as the first lawsuit." *Id.* at 610-11. Because Section 1983 challenges to state convictions involve a civil action brought to challenge a criminal conviction, the relevant doctrine is "collateral estoppel or issue preclusion." Emery G. Lee, "Federal Rights, Federal Forum: Section 1983 Challenges to State Convictions in Federal Court," 51 CASE W. LAW REV. 353, 358 n.33 (Winter 2000). The Court agrees with Plaintiffs that, though the doctrines of res judicata and collateral estoppel are similar, the issue in this case is "collateral estoppel." Nonetheless, the Court does not find that Defendants' "mislabeling" of these two closely-related doctrines is fatal to their arguments.

-14-

The weight of the authority allows a federal court to consider a preclusion defense in a Rule 12(b)(6) motion to dismiss. *See DeNune v. Consolidated Capital of N. Am.*, 288 F. Supp. 2d 844, 852 (N.D. Ohio 2003); *see, e.g., Rushford v. Firstar Bank, N.A.,* 50 Fed. Appx. 202, 203 (6th Cir. Oct. 28, 2002) (affirming "the district court's dismissal pursuant to Rule 12(b)(6) based on principles of preclusion); *City of Canton v. Maynard,* 766 F.2d 236, 239 (6th Cir.1985) (affirming district court's rule 12(b)(6) dismissal on grounds of preclusion). Further, for the purposes of a federal court analyzing the defense of issue preclusion, the Sixth Circuit has recognized that the Full Faith and Credit statute, 28 U.S.C. § 1738,[16] requires a federal court to give a state court judgment the same preclusive effect such judgment would have in state court. *See Reithmiller v. Blue Cross Blue Shield of Michigan*, 824 F.2d 510 (6th Cir. 1987) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given

---

[16]The Full Faith and Credit Statute reads:

Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.

The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

42 U.S.C. § 1738.

that judgment under the law of the state in which the judgment was rendered.")); *Heyliger v. State Univ. & Cmty. Coll. Sys.,* 126 F.3d 849, 851-52 (6th Cir.1997). The preclusive effect of a prior state court judgment on a matter pending in federal court is determined by the law of that state. *See Allen v. McCurry*, 449 U.S. 90 (1980).

Because Plaintiffs' state proceedings occurred in Ohio, this Court must consult Ohio's law of collateral estoppel to determine whether the state appeals court's decision precludes this Court from considering Plaintiffs' claims under the First, Fourth and Fourteenth Amendments. *Migra,* 465 U.S. at 81 (instructing federal courts to apply the collateral estoppel law of the state which issued the prior judgment); 28 U.S.C. § 1738 (federal courts must give full faith and credit to state court judgments). In Ohio, "issue preclusion precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action." *MetroHealth Med. Ctr. v. Hoffmann-Laroche, Inc.*, 685 N.E.2d 529, 533 (Ohio 1997) (internal quotation marks and citations omitted).[17]

> Collateral estoppel applies when the fact or issue[:] (1) was actually and directly litigated in the prior action[;] (2) was passed upon and determined by a court of competent jurisdiction[;] and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action.

*Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994). Therefore, this Court may not bar Plaintiffs from asserting their constitutional claims unless the Ohio appeals court considered the "identical" claim and the court's rejection of the claim was "essential [to its] judgment." *See*

---

[17]The Court observes that this understanding of collateral estoppel is consonant with the Supreme Court's view of the doctrine as it applies in the 42 U.S.C. § 1983 arena. As the Court found in *Allen:* "Under collateral estoppel, once a court has decided an issue or fact *necessary to its judgment,* that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." 449 U.S. at 94 (emphasis added) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)).

*McKinley v. City of Mansfield*, 404 F.3d 418, 420 (6th Cir. 2005) (citing *Goodson v.*

*McDonough Power Equip., Inc.*, 443 N.E.2d 978, 985 (Ohio 1983)).

An Ohio state court already found that Plaintiffs' Meyer and Spingola's arrests and

prosecutions for violating O.F.C. F-403 were in breach of the First, Fourth, and Fourteenth

Amendments. Defendants argue that, therefore, Plaintiffs are now estopped from asking the

Court to relitigate the issue based on their assertions that there was no probable cause for their

arrests or that O.F.C. F-403 is an unconstitutionally vague prior restraint on the First

Amendment right to "expressive burning."

Plaintiffs assert that this Court must now hear their § 1983 suit because Defendants

lacked probable cause to arrest them for "open burning" in June 2001. Defendants, however,

argue that because Plaintiffs pled no-contest and were found guilty in connection with those

same "open burning" charges in state court, they are now estopped from making an argument

that Defendants lacked probable cause to arrest them.

Defendants rely on *Walker v. Schaeffer* for the proposition that plaintiffs who have pled

no-contest in a criminal proceeding are estopped from bringing a § 1983 claim seeking damages

based upon claims of false arrest and/or false imprisonment. 854 F.2d 138, 142 (6th Cir. 1988).[18]

---

[18]Though some other courts have voiced their disagreement with the Sixth Circuit's
decision in *Walker*, their holdings, though persuasive, are not binding on this Court; *Walker*
remains good law. See*, e.g. Lichon v. Am. Universal Ins. Co*., 459 N.W.2d 288, 296 (Mich.
1990) (declining to follow *Walker's* proposition that no-contest pleas should be treated as
admissions); *Patterson v. Leyden*, 947 F. Supp. 1211, 1216 (N.D. Ill. 1996) (disagreeing with
*Walker's* assertion that there is a common-law rule stating that a "plaintiff's arrest for a criminal
conviction bars a suit for false arrest based on a claim that there was no probable cause to arrest
the plaintiff"); *Pete v. Metcalfe*, 8 F.3d 214, 219 n.9 (5th Cir. 1993) (finding that after the
Supreme Court's ruling in *Haring v. Prosise*, 462 U.S. 306 (1983), the Fifth Circuit will no
longer adhere to *Walker's* conclusion that if a criminal conviction is valid the criminal defendant
is collaterally estopped from bringing a § 1983 action based on events surrounding the

In *Walker*, plaintiffs, arrestees who had pled no-contest in state court criminal actions and who had been found guilty, brought a § 1983 action against police officers alleging false arrest and false imprisonment in violation of their constitutional rights.  *Id*. at 138.  The defendant police officers moved for summary judgment, and, when the district court denied their motion, the officers appealed to the Sixth Circuit.  *Id*.  The Sixth Circuit found that the plaintiffs' pleas in state court "and the finding of guilt and imposition of fines by that court estop plaintiffs from now asserting in federal court that the defendant police officers acted without probable cause." *Id*. at 142.  Further, the Court found that the defendant police officers' actions lay within the scope of the doctrine of "qualified immunity" as claimed and that defendants' motion for summary judgment should have been granted.

The facts of the instant litigation are similar to those in *Walker*.  854 F.2d at 138.  Much like the plaintiffs in *Walker* pled no-contest to the criminal allegations brought against them in state court, in this case, Plaintiffs Meyer and Spingola pled no-contest in state court and were found guilty of the open burning charges.  *See* Complaint ¶ 26.  Further, just as the *Walker* plaintiffs brought a § 1983 claim for false imprisonment based on the conduct for which they were adjudged guilty by a state court, Plaintiffs herein bring a § 1983 claim under the First, Fourth, and Fourteenth Amendments based on the same conduct for which they were adjudged guilty by a state court.  *Id*.

Though this case closely resembles *Walker*, Plaintiffs argue that it is *more similar* to *Haring v. Prosise*.  462 U.S. 306 (1983).  In *Haring*, after pleading guilty to manufacturing a controlled substance in a Virginia state court, plaintiff, Mr. Prosise, brought a damages action

prosecution).

-18-

under §1983 against police officers who participated in a search of his apartment, alleging that the search had violated his Fourth Amendment rights.  *See* 462 U.S. at 306.  In response, the defendant police officers argued that even though the constitutionality of their conduct had not been litigated in the state criminal proceedings, "Prosise' plea of guilty estopped him from asserting a [F]ourth [A]mendment claim in a § 1983 suit [because his] plea of guilty necessarily implied that the search giving rise to the incriminating evidence was lawful." *Id*. at 310 (citations omitted).  Nonetheless, the Supreme Court disagreed, finding that in federal actions, including § 1983 actions, a state-court judgment will not be given collateral-estoppel effect where the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court.  *Id*. at 321-22.  Further, the Supreme Court held that a criminal defendant does *not* waive his Fourth Amendment claims by pleading guilty in state court.  *Id*.

In their Opposition Motion, Plaintiffs argue that *Haring*'s holding allows federal courts to make exceptions to collateral estoppel for § 1983 actions in which federal courts need to "step in" to protect federal rights that state courts were either unable or unwilling to protect.  Further, they contend that "[t]he *Haring* principle fits this case like a glove, and [that] it will constitute a serious emasculation of federal judicial authority if state court litigants are left to the mercy of whatever state courts dish out to them in criminal proceedings, with no federal remedy or forum for vindicating federal constitutional rights."

*Haring* is distinguishable from the case sub judice.  In *Haring*, the state court had not previously considered Mr. Prosise's Fourth Amendment claim; in this case, Plaintiffs admit that the state court had already heard and *denied* their arguments that the Fire Code was an

-19-

impermissible infringement of the First Amendment.[19]  Accordingly, the Court will apply the

principles of *Walker* barring Plaintiffs from bringing § 1983 claims based on issues already

litigated in state court.[20, 21]

---

[19]Again, Plaintiffs maintain that "[t]he 'pretrial ruling' by the state court judge referred to in paragraph 26 of the Complaint was nothing more than an informal, off-the-record pretrial discussion with counsel," and that "the issue was[, therefore,] not litigated or 'determined' in any legal sense."  *See* Pl.'s Opp. at 13 n.2

[20]Defendants argue that Plaintiffs Meyer and Spingola's claim for damages is also barred by the doctrine of *Heck v. Humphrey*.  512 U.S. 477 (1994).  According to *Heck v. Humphrey*, in order to recover damages in a § 1983 action for harm allegedly caused by government actions whose unlawfulness would render a conviction invalid, a § 1983 plaintiff must prove that the conviction is no longer intact.  512 U.S. at 486-87.  As Plaintiffs have not alleged facts showing that their convictions were reversed, the Court agrees that the *Heck v. Humphrey* doctrine applies in this case.  Nonetheless, the Court has already granted Defendants' Motion to Dismiss on other grounds.

[21]Defendants argue that Plaintiffs Meyer and Spingola's claims also run afoul of the *Rooker-Feldman* doctrine.  *See D.C. Ct. Of Appeals v. Feldman*, 460 U.S. 462 (1983) (finding that federal courts may *not* exercise appellate jurisdiction over the decisions and/or proceedings of state courts, including claims that are "inextricably intertwined" with issues decided in state court proceedings).  Defendants assert that because Plaintiffs Meyer and Spingola could not have been adjudged guilty of open burning unless O.F.C. F-403 was held to be constitutional, Plaintiffs' claims constitute a direct attack on the issues already presented to and determined by the state court.  This Court finds, however, that the Defendants have mis-interpreted the *Rooker-Feldman* doctrine.

In a recent case, when considering similar facts, the Sixth Circuit found that the *Rooker-Feldman* doctrine does not apply.  *Hood v. Keller*, 341 F.3d 593, 597 (6th Cir. 2003).  In *Hood*, the plaintiff, Hood, a clergyman who had been convicted of criminal trespass after being arrested for preaching and distributing literature on statehouse grounds without a permit, brought an action against state officials for declaration that the state regulation requiring that anyone wishing to use the statehouse grounds obtain a permit violated his rights to free speech and freedom of religion and was both vague and overly-broad.  *See id.* at 593.  Hood also sued for injunctive relief and compensatory damages.  *Id.*  Though this Court initially barred Hood's claims under the *Rooker-Feldman* doctrine, the Sixth Circuit overturned Judge Marbley's decision.  *See Hood v. Keller*, 2002 WL 483560, at * 6-7 (S.D. Ohio Mar. 15, 2002) ("[A]s Plaintiff seeks review of the state court's finding that the Capitol Square permit process is constitutional, the proper forum for that review is the state court of appeals.  Under the *Rooker-Feldman* doctrine, the Court lacks jurisdiction to hear the Plaintiff's claims, and therefore, GRANTS the Defendants' Motions to Dismiss.").

The Sixth Circuit found that because, in bringing suit, Hood did *not* challenge his state

### 3. Selective Enforcement Claim

In addition to Defendants' arguments that Plaintiffs are collaterally estopped from asserting their claims, Defendants also contend that Plaintiffs have failed to allege adequately a prima facie case of selective enforcement.  This Court agrees.

The Sixth Circuit and the Ohio Supreme Court have clearly established their observance of the equal protection prohibition against selective prosecutions.  *See Stemler v. City of Florence*, 126 F.3d 856 (6th Cir. 1997) (noting that "[t]he courts have long held that a selective enforcement claim may be available even when there is probable cause for prosecution"); *State v. Lamar*, 767 N.E.2d 166 (Ohio 2002) ("Although a selective prosecution claim is not a defense to [a] criminal charge itself, a defendant may raise it as an 'independent assertion that the

---

court criminal trespass conviction, the *Rooker-Feldman* doctrine was inapplicable.  *Id*. at 597 (citing *Edwards v. Illinois Bd. of Admissions to Bar*, 261 F.3d 723, 729 (7th Cir. 2001) ("When the litigant is challenging the constitutionality of a rule that was applied to him, but is not asking to correct or revise the determination that he violated the rule, *Rooker-Feldman* is no obstacle to the maintenance of the suit." (internal quotation marks omitted)).  The court explained that:

> [t]he *Rooker-Feldman* doctrine. . . does not prohibit federal district courts from exercising jurisdiction where the plaintiff's claim is merely "a general challenge to the constitutionality of the state law applied in the state action," rather than a challenge to the law's application in a particular case. . . In determining the applicability of the *Rooker-Feldman* doctrine, federal courts cannot simply compare the *issues* involved in the state-court proceeding to those raised in the federal-court plaintiff's complaint," but instead, "must pay close attention to the *relief* sought by the federal-court plaintiff."

*Id*. (internal citations omitted).  Accordingly, in this case, where Plaintiffs Meyer and Spingola state claims for declaratory and injunctive relief, and monetary damages, but do *not* seek to overturn the state court's previous decision finding them guilty, *Rooker-Feldman* is inapplicable.

prosecutor has brought the charge for reasons forbidden by the Constitution.'"").  To allege a

prima facie claim of selective enforcement,[22] a Plaintiff must allege the following:

> First, [the state actor] must single out a person belonging to an identifiable group, such as those of a particular race or religion, *or a group exercising constitutional rights*,[23] for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations.  Second, he must initiate the prosecution with a discriminatory purpose.  Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.

*See Stemler*, 126 F.3d at 856 (emphasis added).  Selective enforcement can also lead to § 1983

liability if the plaintiff pleads "purposeful discrimination" intended to accomplish some

forbidden aim.  *Id*.; *see also, Birth Control Ctrs., Inc. v. Reizen*, 743 F.2d 352, 359-69 (6th Cir.

1983) (affirming trial court's finding that state officials did not intentionally discriminate against

abortion clinics when enforcing surgical clinic licensing regime); *Wright v. MetroHealth Med.*

---

[22]In *Futernick v. Sumpter Township*, the Sixth Circuit Court of Appeals differentiated between two types of selective prosecution claims.  *See* 78 F.3d 1041 (no longer good law for its assertion that a "class of one" claim is not a viable constitutional claim under 42 U.S.C. § 1983).  The court wrote:

> We have differentiated the two types of selective prosecution claims.  True "selective prosecution" requires the plaintiff to show: (1) membership in a protected group; (2) prosecution; (3) that others in a similar situation not members of the protected group would not be prosecuted; and (4) that the prosecution was initiated with discriminatory intent. . . . "Vindictive prosecution" is prosecution to deter or punish the exercise of a constitutionally protected right.  The plaintiff must show: (1) exercise of a protected right; (2) the prosecutor's "stake" in the exercise of that right; (3) the unreasonableness of the prosecutor's conduct; and, presumably, (4) that the prosecution was initiated with the intent to punish the plaintiff for exercise of the protected right. . . .

*See Futernick*, 78 F.3d at 1056 n.7 (internal citations omitted).  Considering the facts of this case, it appears that Plaintiffs' are claiming true "selective prosecution."

[23]Plaintiffs allege that they fit in this group in that through their efforts to "expressively burn" "Rainbow Flags," the Koran, and certain Supreme Court decisions, they seek to exercise their First Amendment right to freedom of expression.

*Ctr.*, 58 F.3d 1130, 1137 n.7 (6th Cir. 1995) (dismissing plaintiff's claim that hospital selectively

enforced employment policy because plaintiff did not allege any impermissible intent).

Nonetheless, the Sixth Circuit has also acknowledged that, though a claim of selective

enforcement exists, "[i]t is well-established that the prosecutor has a wide range of discretion" in

deciding whether to prosecute and what charges to file."  *See U.S. v. Armstrong*, 517 U.S. 456

(1996).

> There is no right under the Constitution to have the law go unenforced against you, even
> if you are the first person against whom it is enforced, and even if you think (or can
> prove) that you are not as culpable as some others who have gone unpunished. The law
> does not need to be enforced everywhere to be legitimately enforced somewhere; and
> prosecutors have broad discretion in deciding who to prosecute.

*Futernick*, 78 F.3d at 1056; *see also Wayte v. United States*, 470 U.S. 598, 607 (1985)

(government's choice to prosecute only those draft violators who inform government of their

intention not to register is not a violation of equal protection).  Therefore, under Ohio law, in the

absence of "evidence of an invidious motive or bad faith, a court will not presume intentional or

purposeful discrimination from the mere failure to prosecute other violators of the statute or

ordinance that the defendant was charged with violating."  *See City of Pepper Pike v. Dantzig*,

2004 WL 1119627 (Ohio App. May 20, 2004).

Defendants contend that Plaintiffs Meyer and Spingola have failed to allege any facts

showing that a government actor distinguished between Plaintiffs and Mr. Buckel based on *any*

reason, let alone a dubious one.  Further, they argue that Plaintiffs have not set forth facts

showing that any City official had knowledge that Mr. Buckel was conducting open burning

without a permit and failed to take action.

The Court agrees that Plaintiffs asserted nothing more than conclusory allegations that the contrast between the City's treatment of Mr. Buckel and Plaintiffs satisfies their burden of pleading a prima facie case of selective enforcement.  In their Complaint, Plaintiffs write, "[t]he reason [Mr.] Buckel was allowed to conduct an open burning without a permit, without any interference by City officials, was that the City officials did not care about the content of [his] message."  Complaint ¶ 24.  They also argue that the contrast between the City's treatment of Plaintiffs and their treatment of Mr. Buckel provides evidence that the City had no real political process for issuing ceremonial burning permits.[24]  Nonetheless, Plaintiffs provide no facts showing that the City officials intended to treat Mr. Buckel differently, or that they even *knew* of Mr. Buckel's ceremonial burning.  Without this information, the City's failure to prosecute Mr. Buckel could just as easily show a lack of awareness as selective treatment.  Though Plaintiffs contend that their allegations suffice because, on a motion to dismiss, "[the] Court must accept as true the allegations in the Complaint," these allegations are too conclusory to set forth a valid selective enforcement claim on which Plaintiffs may be granted relief.  Accordingly, because Plaintiffs are collaterally estopped from asserting their probable cause and vagueness arguments,

---

[24]Plaintiffs contend that,

> [t]he allegations regarding [Mr.] Buckel are significant for two reasons.  *First*, they provide an undeniable contrast between (i) Defendants' zeal for requiring a burn permit for anti-Homosexual speech in June 2001 (Spingola and Meyer) and (ii) Defendants' total lack of concern for Buckel's less controversial burn demonstration the following year.  *Second*, Buckel's futile efforts to obtain a burn permit less than a year after Spingola and Meyer were arrested for burning a flag without one, strongly suggest that the City of Columbus really had no process for issuing burn permits and that the entire Spingola/Meyer episode in 2001 was merely a political prosecution and a sham.

Pl.'s Opp. at 5.

and because the Court agrees with Defendants that Plaintiffs have failed to allege a prima facie

case of selective enforcement, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs'

First Cause of Action.

### 4. Qualified Immunity

Defendants also argue that because Plaintiffs entered no-contest pleas in connection with

their June 2001 arrests and prosecutions for "open burning," Defendant Piccininni is entitled to

qualified immunity from Plaintiffs' claims.[25]  Because, as set forth above, this Court found no

constitutional violation in this matter, it need not address the issue of Defendant Piccininni's

qualified immunity.  *See Prokos v. City of Athens,* 2004 WL 2940867, at *6 (6th Cir. Dec. 21,

2004) (because the court found no constitutional violation in the matter, it declined to address

the issue of qualified immunity).

### B. Plaintiffs' Second Cause of Action: Whether Plaintiffs Fail to State a § 1983 Claim for Preliminary or Permanent Injunctive Relief

In their Second Cause of Action, Plaintiffs claim an entitlement to injunctive relief

against the City.  In their Prayer for Relief, they seek to have the Court enjoin the City from

enforcing O.F.C. F-403 to prevent  expressive burning in the future.  Defendants argue that

Plaintiffs lack standing to seek injunctive relief, and that their claims are moot.

In order to meet the Article III standing requirements, a plaintiff must show that: "(1) he

has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent,

---

[25]In their Motion to Dismiss, Defendants claim that both Sergeant Piccininni and Officer
Bush are entitled to qualified immunity as to Plaintiffs' claims.  *See* Def.'s Motion to Dismiss at
13.  Because, however, the Court has determined that all of Plaintiffs' claims against Defendant
Officer Bush are time-barred under Ohio law, the Court will only consider Defendants' qualified
immunity arguments as they apply to Defendant Sergeant Piccininni.

not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *See Am. Civil Liberties Union of Ohio, Inc. v. Taft*, 385 F.3d 641, 645 (6th Cir. 2004).

Defendants argue that because the O.F.C. F-403's requirement of open burning permits has been upheld under the First Amendment and because Plaintiffs have not set forth any facts to show that the City's open burning permit requirement unconstitutionally impedes freedom of expression, Plaintiffs have failed to allege a threatened injury-in-fact, and, therefore, have no standing.  Plaintiffs, on the other hand, contend that "[i]f [they] do not have standing to challenge the Defendants' policies and practices for enforcement of the City fire code, past and future, it is difficult to imagine who would have standing."  They argue that though Meyer, Spingola, and Daubenmire admit that they have no permit applications pending for ceremonial burnings in the near future, because they may want to conduct such burnings later on, unless the Court grants them injunctive relief, they face "an undeniable threat of confusion, intimidation, standardless discretion and/or content based discrimination from City officials should they apply for burn permits."  Because Plaintiffs cannot allege specific injuries-in-fact, their arguments are nothing but efforts to salvage a federal claim out of what is no more than the mere possibility that, at some unknown time in the future, Plaintiffs will apply for and be unconstitutionally denied open burning permits.

Further, Plaintiffs argue that should the Court find that they have no injury-in-fact, they should be permitted to challenge O.F.C. F-403 under a First Amendment standing exception. *See Virginia v. Am. Booksellers Assoc., Inc.*, 484 U.S. 383, 392-93 (1988) (finding that plaintiffs

had standing to bring a pre-enforcement facial challenge based on injury to booksellers and infringement of First Amendment rights of bookbuyers).  Plaintiffs contend that *Am. Booksellers* allows them to challenge O.F.C. F-403 based on their prediction that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.  *See id*.  Nonetheless, when the Supreme Court ruled in *Am. Booksellers*, a state court had not previously affirmed the constitutionality of the regulation in question.  *See* 484 U.S. at 383.  As such, *Am. Booksellers* is easily distinguished from the case sub judice, in which a state court has already held O.F.C. F-403 to be constitutional on its face.  *See City of Columbus v. Meyer & Spingola*, 786 N.E. 2d at 521.

Therefore, because Plaintiffs have alleged no injury-in-fact, and because their case does not fit into the First Amendment exception allowing Plaintiffs standing to bring claims of injunctive relief for *potential* injuries of others not before the Court, Plaintiffs do not have standing to sue for injunctive relief.  Therefore, this Court **GRANTS** Defendants' Motion to Dismiss Plaintiffs' Second Cause of Action.  Because this Court has already dismissed Plaintiffs' Second Cause of Action for lack of standing, it need not make a determination on the issue of whether Plaintiffs' Second Cause of Action is moot.

**C. Plaintiffs' Third Cause of Action:**
**Whether Plaintiffs Meyer, Spingola & Daubenmire**
**Fail to State a § 1983 Claim for Declaratory Judgment**

In their Third Cause of Action, Plaintiffs seek a declaratory judgment against the City that their First and Fourteenth Amendment rights have been violated.  Generally, the standard to determine whether a federal district court should exercise discretionary jurisdiction under 28

U.S.C. § 2201[26] is whether a declaratory judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the judicial proceeding.  *See Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1994).

Defendants contend that because the state court has already held that O.F.C. F-403 is not unconstitutional on its face, Plaintiffs are not entitled to have this Court rule that the City's open burning permit requirement is an unconstitutional abridgment of their First Amendment rights. Plaintiffs, however, argue that through their arguments, Defendants are merely trying to force Plaintiffs between the "Scylla of intentionally flouting state law and the Charybdis of foregoing what [Defendants believe] to be constitutionally protected activity" to avoid being "enmeshed" in a criminal proceeding.  Pl.'s Opp. at 10.  Nevertheless, this Court finds Plaintiffs' argument unconvincing.  Defendants are not trying to *force* Plaintiffs to break the law.  Plaintiffs may apply for permits, and undergo the process required under O.F.C. F-403, as a state court has already confirmed that the regulation does not violate the First Amendment right to expressive

---

[26]The relevant statute reads in part:

(a) In a case of actual controversy within its jurisdiction, . . .any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such. . . .

28 U.S.C. § 2201.

burning.  The Court therefore **GRANTS** Defendants' Motion to Dismiss Plaintiffs' Third Cause of Action.[27]

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED** on all counts.

**IT IS SO ORDERED.**


\_\_**s/Algenon L. Marbley**_____
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**


**DATED: March 1, 2006**

---

[27]Defendants also allege that Defendant City is entitled to assert the affirmative defense of "municipal immunity" as to Plaintiffs' Second and Third Causes of Action.  Nevertheless, as the Court has already decided to **GRANT** Defendants' Motion to Dismiss on other grounds, it need not discuss the merits of Defendant City's "municipal liability" defense.